# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| TANYA AMMONS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 08 C 5663 |
| v. ) | |
| ) | Judge Joan B. Gottschall |
| METROPOLITAN WATER ) | |
| RECLAMATION DISTRICT OF ) | |
| GREATER CHICAGO, ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM OPINION & ORDER**

This employment discrimination case reaches this court on a motion for reconsideration. On March 18, 2011, this court granted summary judgment to the Defendant, Metropolitan Water Reclamation District of Greater Chicago (MWRD) on Plaintiff Tanya Ammons' counts alleging employment discrimination under the Americans with Disabilities Act (ADA) and Title VII. The court rejected Ammons' ADA claim under the exhaustion of remedies doctrine, noting that her charge focused on two discrete acts—denied transfers—that were not like or reasonably related to her original charge to the Equal Employment Opportunity Commission (EEOC). (Summ. J. Op. at 9, ECF No. 138.) It rejected her Title VII claim for the same reason. (*Id.*) This court reconsiders its ruling and concludes that its reliance on *Conner v. Illinois Department of Natural Resources*, 413 F.3d 675 (7th Cir. 2005), was incorrect.

# I. BACKGROUND

Ammons suffers from clinical depression and went on approved medical leave from her job as a Maintenance Laborer Class A (MLA) with the MWRD on December 21, 2006. Pursuant to the ADA, she requested to engage in the interactive process to determine a reasonable accommodation for her disability on December 28, 2006. In February 2007, Ammons' psychiatrist sent two letters to the MWRD detailing Ammons' workplace restrictions. Meanwhile, on February 8, Ammons formally requested a transfer to one of two positions—the Calumet Centrifuge or the Calumet Storeroom. Although the Centrifuge position was vacant at the time Ammons made her request, another employee had already requested a transfer into that position on May 31, 2006. The Storeroom position was not vacant at the time of Ammons' request for transfer.

On March 12, 2007, MWRD's director of personnel, Patrick Foley, wrote to Ammons indicating that MWRD had completed a preliminary analysis of Ammons' request for accommodation, but noted that it could not finalize any determination until Ammons' doctor, Dr. Herman, released her to return to work. On March 19, 2007, Dr. Herman authorized Ammons to return to work. On April 18, 2007, Ammons filed a charge with the EEOC alleging that MWRD had failed to accommodate her disability.

Meanwhile, the Centrifuge position, which had been vacant since June 2006, was filled by Mr. Watts on June 11, 2007. The Storeroom position became vacant on April 30, 2007 and was filled by Mr. Jones on August 27, 2007. Around the time of these transfers, MWRD had continued to correspond with Ammons and her doctor. Dr. Herman lifted Ammons' travel restriction on May 21, 2007, and Ammons had clarified the duties she could perform in a letter to MWRD dated May 22, 2007. Nonetheless, the

MWRD sent a letter to Ammons on June 21, 2007 indicating that it could not identify any reasonable accommodations for Ammons. In that letter, MWRD offered unpaid leave to Ammons. Ammons took that leave, obtained a right to sue letter from the EEOC on August 11, 2008, and she filed a complaint in this court on October 3, 2008.

## II. LEGAL STANDARD

The Seventh Circuit has stated that "[a] district court may reconsider a prior decision when there has been a significant change in the law or facts since the parties presented the issue to the court, when the court misunderstands a party's arguments, or when the court overreaches by deciding an issue not properly before it." *United States v. Ligas*, 549 F.3d 497, 501 (7th Cir. 2008). Motions to reconsider are meant to correct "'manifest errors of law or fact or to present newly discovered evidence.'" *Rothwell Cotton Co. v. Rosenthal & Co.*, 827 F.3d 246, 251 (7th Cir. 1996) (quoting *Keene Corp. v. Int'l Fidelity Ins. Co.*, 561 F. Supp. 656, 665 (N.D. Ill. 1982)).

## III. ANALYSIS

This court committed a manifest error of law in granting MWRD's summary judgment motion as to Ammons' ADA claim.[1] Specifically, the court misapplied *Conner v. Illinois Department of Natural Resources*, 413 F.3d 675 (7th Cir. 2005), to the ADA claim in this case. Ammons' ADA allegations did not pertain solely to discrete denials of transfers. At bottom, Ammons' ADA claim was about a failure to accommodate Ammons' disability. The ADA mandates that all employers engage in a flexible, interactive process to accommodate disabled employees, *See Hendricks-Robinson v. Excel Corp.*, 154 F.3d 685, 693 (7th Cir. 1998), and Ammons has alleged that the

---

[1] The court does not reconsider its ruling on Title VII, as Ammons does not advance any arguments that would allow the court to reconsider that holding. The focus of the motion for reconsideration was on Ammons' failure to accommodate claim.

Defendant failed to participate in that process in good faith, resulting in MWRD's failure to offer any reasonable accommodation to Ammons. The "interactive process" is just that—a *process*—and is the sort of continuous activity that is not a discrete action under *National Passenger Railroad Corporation v. Morgan*, 536 U.S. 101 (2002). Thus, the court reexamines its ADA ruling.

In applying *Conner* to Ammons' case, this court misapprehended Ammons' claim. It assumed that her claim was solely about two discrete acts—the denial of the Centrifuge and Storeroom transfers that occurred after Ammons had filed her EEOC charge. These denied transfers, however, were only a portion of Ammons' failure to accommodate claim.

Although MWRD has argued otherwise, Ammons has consistently maintained a failure to accommodate claim throughout this litigation. Ammons' initial EEOC charge in April 2007 stated:

> I began employment with Respondent in July 1986. My current position is Laborer. I have a medical condition and Respondent is aware of my condition. I began a leave of absence in November 2006 to treat my medical condition with a protected return to work date of March 19, 2007. I was cleared to return to work on March 18, 2007 by both my doctor and Respondent's doctor, with restrictions. Respondent has *refused to accommodate* my medical restrictions and will not allow me to return to work as of this date. (Ammons' Charge of Discrimination) (emphasis added).

The failure to accommodate claim was reiterated once again in Ammons' complaint, filed on October 3, 2008, which stated that "Ammons was subjected to discrimination by [MWRD] because of her disability since she clearly was able to return to work and [MWRD] *refused to accommodate* her and has not allowed her to return to work to this date." (Compl. ¶ 13.)

4

As the Seventh Circuit has made clear, a failure to accommodate claim has three elements. To prevail on such a claim, Ammons must show that (1) she is a qualified individual with a disability; (2) the employer was aware of her disability; and (3) the employer failed to reasonably accommodate the disability. *EEOC v. Sears, Roebuck & Co.*, 417 F.3d 789, 797 (7th Cir. 2005). Along with this third element, the ADA "requires that employer and employee engage in an interactive process to determine a reasonable accommodation." *Id.* There is no dispute in this case that Ammons, who had suffered from depression, was a qualified individual with a disability, and the record clearly establishes that the MWRD was aware of that disability. Thus, the court focuses on MWRD's alleged failure to reasonably accommodate the disability through its engagement in the interactive process.

To make a reasonable accommodation claim based on an employer's alleged bad faith participation in the interactive process, "a plaintiff must allege that the employer's failure to engage in an interactive process resulted in a failure to identify an appropriate accommodation for the qualified individual." *Rehling v. City of Chi.*, 207 F.3d 1009, 1016 (7th Cir. 2000). The Seventh Circuit is wary of ADA claims that allege breakdowns in the interactive process in situations where employers nevertheless offer reasonable accommodations to employees. *See, e.g.*, *id.* ("The ADA seeks to ensure that qualified individuals are accommodated in the workplace, not to punish employers who, despite their failure to engage in an interactive process, have made reasonable accommodations."). This is not such a case, as nothing in the record suggests that MWRD has even offered Ammons an accommodation.

Unlike denials of transfers, failures to promote, and termination, an alleged failure to engage in the interactive process in good faith under the ADA cannot be viewed as a discrete act for exhaustion purposes. As the Seventh Circuit has noted, the interactive process requires "a great deal of communication." *Bultemeyer v. Fort Wayne Comm. Sch.*, 100 F.3d 1281, 1285 (7th Cir 2006). It has recognized that the process involves a dialogue between the employer and employee, and that it "requires participation by both parties." *Beck v. Univ. of Wisc. Bd. of Regents*, 75 F.3d 1130, 1135 (7th Cir. 1996). And, when assessing whether an employer should be liable for bad faith participation in the interactive process, courts are directed to "look for signs of failure to participate in good faith or failure by one of the parties to make reasonable efforts to help the other party determine what specific accommodations are necessary." *Id.* Parties that obstruct, delay, or fail to communicate may also be acting in bad faith for ADA purposes. *See id.* These inquiries into the interactive process necessarily require that courts examine continuous conduct over an extended period of time.

This case is thus different from *Conner*, a Title VII case in which the plaintiff suffered no disability and only made allegations regarding discrete acts. In *Conner*, the plaintiff filed an EEOC charge in November 2002 stating that she "had been unfairly passed over for a promotion in 2001" and was "denied temporary assignment pay for taking over a retiree's duties from December 2001 through January 2002." 413 F.3d at 678. Then, Conner attempted to litigate a non-promotion that occurred in December 2002—a discrete act that was undoubtedly outside the scope of Conner's EEOC charge. While the plaintiff in *Conner* checked a "continuing violation" box on the EEOC charge

form, a failure to promote—in and of itself—has never been viewed as a continuing violation. *Morgan*, 536 U.S. at 114.

Ammons' claims, unlike Conner's, do not undermine the goals of the ADA's exhaustion requirements. The exhaustion requirement intends to "give[] the EEOC a chance to investigate the allegedly discriminatory conduct and [] seek voluntary compliance or conciliation without a lawsuit." *Id.* at 680. In *Conner*, this purpose would have been undermined if the court had allowed Conner's December 2002 failure to promote claim to proceed. By this time, the EEOC had already *finished* its investigation, issuing a dismissal and right to sue letter to Conner on November 6, 2002. *Conner*, 432 F.3d at 678. As the Seventh Circuit stated, given that it had been impossible for Conner to describe the alleged December discrimination in November, "there was no way for the EEOC to undertake preliminary investigation as contemplated by Title VII's statutory design." *Id.* at 680.

In Ammons' case, on the other hand, the EEOC had a full opportunity to investigate Ammons' charge. Her charge was filed on April 26, 2007, the EEOC investigated, and it finally issued Ammons' right to sue letter August 11, 2008—over a year after Ammons filed the charge and after both the Centrifuge and Storeroom positions in this case had been filled. Whereas filing an additional, later EEOC charge in *Conner* would have caused further EEOC investigation into the new claim, an additional charge in Ammons' case would not have served such a purpose. Both before and after Ammons filed her EEOC charge, the MWRD had still failed to accommodate Ammons' disability and the EEOC investigation could necessarily have examined MWRD's continuing failure to accommodate.

Because the court necessarily must examine the details of MWRD's alleged failure to accommodate, including MWRD's behavior during the interactive process, the court further erred when it assumed incorrectly that is could not consider evidence regarding the denied Centrifuge and Storeroom transfers that occurred on June 11, 2007 and August 27, 2007, in the months following Ammons' EEOC charge. This court's summary judgment opinion made this ruling under the assumption that these transfers were not "like or reasonably related" to the underlying EEOC charge of discrimination.

The Seventh Circuit has noted that the standard for "reasonably related" claims is a liberal one, and is satisfied "if there is a reasonable relationship between the allegations in the charge and those in the complaint, and the claim in the complaint could reasonably be expected to be discovered in the course of the EEOC's investigation. *Teal v. Potter*, 559 F.3d 687, 692 (7th Cir. 2009). The allegations in the charge also "must, at a minimum, describe the *same conduct* and implicate the *same individuals*." *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 501 (7th Cir. 1994) (emphasis in original).

In Ammons' case, as discussed above, the allegations in her EEOC charge and the allegations in the complaint focus on MWRD's failure to accommodate. The two post-charge failures to transfer, meanwhile, should easily have been discovered in the EEOC's investigation of MWRD's failure to accommodate because any respectable investigation of the interactive process between Ammons and MWRD would have revealed (1) that Ammons requested those two transfers as of February 8, 2007; and (2) that there were subsequently vacancies in those positions that were not given to Ammons. Moreover, the

failure to accommodate charge describes the same conduct and implicates the same individuals.[2]

### IV. Conclusion

Accordingly, the court reconsiders the legal basis for its grant of summary judgment in MWRD's favor. It agrees with Ammons that MWRD's failure to transfer her to the Centrifuge and Storeroom positions can properly be litigated in this action. With respect to the issue of whether Ammons' ADA claim succeeds or fails with respect to these two failures to accommodate, the court will hear oral argument (limited to 30 minutes per side) on a date to be set in this order.

ENTER:

/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: November 9, 2011

---

[2] There was no evidence put forward that the personnel overseeing the interactive process—Mr. Foley and Ms. Bonner—changed between Ammons' filing of her charge and the denied transfers.