# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| TANYA AMMONS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Judge Joan B. Gottschall |
| ) | |
| METROPOLITAN WATER ) | Case No. 08 C 5663 |
| RECLAMATION DISTRICT OF ) | |
| GREATER CHICAGO, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION & ORDER

Plaintiff Tanya Ammons filed suit under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, claiming that her employer, the Metropolitan Water Reclamation District of Greater Chicago ("the MWRD"), failed to accommodate her disability. The court entered summary judgment in favor of the MWRD on March 1, 2012, holding that Ammons failed to raise a dispute of material fact as to whether she was a "qualified individual with a disability" under the ADA because she had not presented evidence that she could perform the essential functions of the positions to which she sought to be reassigned. Ammons now moves the court to reconsider that decision pursuant to Federal Rule of Civil Procedure 59(e).

### I. LEGAL STANDARD

Motions to alter or amend a judgment serve a limited function. A court may grant a Rule 59(e) motion if the movant presents newly discovered evidence or "points to evidence in the record that clearly establishes a manifest error or law or fact." *In re*

*Prince*, 85 F.3d 314, 324 (7th Cir. 1996). The parties may not introduce evidence previously available but unused in the prior proceeding or tender new legal theories. *Id.* The Seventh Circuit has explained that a "manifest error" occurs when "the [c]ourt has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the [c]ourt by the parties, or has made an error not of reasoning but of apprehension." *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990); *see also Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (describing "manifest error" as a "wholesale disregard, misapplication, or failure to recognize controlling precedent"). A motion to reconsider may be appropriate if there has been "a controlling or significant change in the law or facts since the submission of the issue to the [c]ourt." *Bank of Waunakee*, 906 F.2d at 1191.

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue exists if there is evidence on the basis of which the jury could reasonably find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment may be entered against the non-moving party if it is unable to "establish the existence of an element essential to [its] case . . . on which [it] will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## II. BACKGROUND

The court's order of March 1, 2012, explains the background of Ammons's case. (*See* Mem. Op. & Order Mar. 1, 2012, ECF No. 160.) To summarize briefly, Ammons

worked as a maintenance laborer at the MWRD's Calumet wastewater treatment facility. Her position was eliminated while she was on disability leave beginning on December 21, 2006. Ammons suffered from depression and anxiety attacks. Ammons requested reassignment to one of two vacant maintenance laborer positions, one in the Calumet plant's centrifuge building and one in the storeroom. Ammons's psychiatrist informed the MWRD that, due to her medical condition, Ammons could not work in or around tanks, platforms, or water more than two feet deep, travel more than five miles to work, do concrete and brick work, climb ladders, or do utility line excavation and backfill. Her condition also "prevent[ed] her from safely and effectively operating high power tools and equipment such as sledge hammers, electric drills and air powered hammer drills and generators." Ammons was released by her psychiatrist to return to work on March 19, 2007. The MWRD informed her in May 2007 that it would not accommodate her disability because she was unable to perform the essential functions of the maintenance laborer positions in the centrifuge building and storeroom.

The ADA defines a "qualified individual with a disability" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). To avoid summary judgment, an ADA plaintiff must demonstrate a general issue of material fact as to whether she is disabled, whether she can perform the essential functions of the position sought, and whether she has suffered an adverse employment action because of her disability. *Nese v. Julian Nordic Constr. Co.*, 405 F.3d 638, 641 (7th Cir. 2005). "[A] plaintiff must present the court with evidence that, if believed by a trier of fact, would establish all three elements." *Kotwica v. Rose Packing Co.*, 637 F.3d

744, 748 (7th Cir. 2011). The court concluded in its March 1, 2012, opinion that, based on affidavits and testimony from MWRD employees, assigning Ammons to either the centrifuge or the storeroom position would have forced the MWRD to eliminate one or more of the position's principal duties. The court therefore held that Ammons did not demonstrate that she was qualified for relief under the ADA because she did not present evidence from which a trier of fact could conclude that she was able to perform the essential functions of the positions she sought, with or without a reasonable accommodation.

## III. ANALYSIS

Ammons argues that the court committed a manifest error in concluding that the MWRD was entitled to summary judgment because the court misunderstood and overlooked evidence showing that genuine issues of fact exist as to whether Ammons could perform the essential functions of the centrifuge and storeroom positions. Ammons also argues that the court failed to consider whether she could perform forty-seven other vacant MWRD positions.

### A. The Centrifuge Position

First, Ammons challenges the court's holding that Ammons could not perform the essential functions of the centrifuge position. Ammons's doctor restricted her from working "in or around tanks or deep water" and from "working near platforms." The court held that the essential functions of the centrifuge position included work around platforms and tanks. The court found that, while the MRWD presented evidence that employees in the centrifuge position were required to perform cleaning and maintenance work near platforms and tanks, Ammons failed to proffer evidence putting into dispute

the MWRD's claim that working near platforms and tanks was an essential function of the position. Thus, the court held that assigning Ammons to the centrifuge position would have forced the MWRD to eliminate one or more of the position's principal duties. Ammons now argues that a dispute of fact does exist as to whether the centrifuge position required work around tanks or platforms.

Factors to consider in determining whether a duty is an "essential function" under the ADA include the job description, the employer's opinion, the amount of time spent performing the function, the consequences of not requiring it, and past and current work experience. *See Ammons v. Aramark Uniform Servs., Inc.*, 368 F.3d 809, 818 (7th Cir. 2004). Ammons claims that, in its summary judgment opinion, the court overlooked the deposition testimony of Al Nichols, the MWRD's Assistant Chief Operating Engineer, concerning the centrifuge position. She further argues that the court should have struck Nichols's affidavit because it was inconsistent with his deposition testimony.

Nichols stated in his affidavit that walking around tanks and platforms was an unavoidable aspect of the centrifuge position, describing platforms as "areas of higher elevation where a person could potentially lean over and fall." Ammons argues that this assertion is belied by Nichols's deposition testimony, in which Nichols stated that he did not directly supervise the centrifuge position, did not know any worker had ever fallen from a platform in the centrifuge facility, did not know what work was performed in the facility during the second and third shifts, and did not watch the centrifuge maintenance worker every day. He also testified that maintenance workers' job duties depended on what their direct supervisors told them to do.

None of these statements, however, undermines the court's conclusion that the centrifuge position required working around platforms, or establishes that Nichols's deposition testimony was so inconsistent with his affidavit that the court should have stricken the affidavit. *See Buckner v. Sam's Club, Inc.*, 75 F.3d 290, 292 (7th Cir. 1996) ("[T]he law of this circuit does not permit a party to create an issue of fact by submitting an affidavit whose conclusions contradict deposition or sworn testimony."). Nichols identified various work platforms in his deposition testimony. He explained that the centrifuge facility is made up several levels which are connected by ramps and elevated walkways, and that crossing these "platforms" was required to sweep, mop, and otherwise clean the facility. (*See* Pl.'s Mot. to Reconsider Ex. B (Nichols Dep.) 74-77, 79-80, ECF No. 169.) Thus, Nichols's deposition testimony does not contradict statements in his affidavit that the centrifuge position involved working around platforms. Nor does the fact that Nichols was not the direct supervisor of the centrifuge laborer and did not watch the maintenance work every day undermine the court's conclusion as to the essential functions of the position. Nichols testified that he inspected the facility and could tell what work had been done to clean and maintain it. (*Id.* at 161-62.)

The court's prior opinion also relied on the fact that Osoth Jamjun, the MWRD's Chief of Maintenance and Operations, stated in a March 2, 2007, memorandum that the centrifuge position required climbing in and out of tanks and walking around tanks and platforms. Ammons argues that the court's reliance on the memorandum was improper because Jamjun testified during his deposition that he had not seen the centrifuge maintenance worker at work, did not know whether Ammons had worked in or around

6

tanks or platforms, did not know what type of work Ammons did, and did not have supervisory authority over Ammons.

The fact that Jamjun did not have specific knowledge of these duties because he was not a direct supervisor of the centrifuge maintenance worker or of Ammons herself does not directly contradict the statements he made in the memorandum, nor does it undermine the court's conclusion that the MWRD viewed work around tanks and platforms as essential to the centrifuge position. The MWRD's opinion is one factor the court must consider in determining what the essential functions of the centrifuge position were. See *Ammons*, 368 F.3d at 818. Ammons points to nothing in Jamjun's deposition testimony that creates an issue of fact as to whether the MWRD's claim about the essential functions of the position was pretextual.

Ammons further argues that the deposition testimonies of other individuals in the Maintenance and Operations Department at the Calumet plant give lie to the MWRD's assertions about the essential functions of the centrifuge position. She points out that the primary duties of the centrifuge position were cleaning, taking samples, and taking machinery readings, and that Ernest DeLeon, the MWRD's former Safety Coordinator for the plant, testified that the centrifuge position did not require work "in tanks." She further notes that the position involved cleaning of floors, pits, and drainage areas, that a worker could access the lower level of the facility by stairs, and that various power tools were not required to perform the job. Next, she argues that Celeste Hamer, Ammon's immediate supervisor, testified at deposition that all maintenance workers did not do the same work on a given day. Finally, Ammons argues that the MWRD never had an official position as to what constituted a "platform."

7

But even if all of these points are true, this evidence does not create a disputed question of fact as to whether work around tanks and platforms (as opposed to "in tanks") was required of the centrifuge position. The definition of "platform" used by the MWRD in this case was adopted from the deposition of Ammons's psychiatrist, who described a platform as an elevated area "where a person could potentially lean over and fall." (Defs.' Rule 56.1(a)(3) Statement of Facts Ex. 15 (Herman Dep.) 142:5-18, ECF No. 71-16.) Ammons does not point to any evidence in the record to refute the MWRD's assertion that the centrifuge employee needed to work around platforms and tanks as an essential function of the job. Thus, she has not shown that the court committed a manifest error by misapprehending the facts in concluding that Ammons could not perform the essential functions of the centrifuge position.

**B. The Storeroom Position**

The court found that Ammons's physician had restricted her from climbing ladders and operating power tools, and that these were essential functions of the storeroom position. The MWRD presented evidence that storeroom employees operated power tools and climbed ladders on a regular basis. The sole maintenance laborer that worked in the storeroom, William Jones, stated in an affidavit that his work regularly involved climbing ladders and operating power tools and equipment. Patricia McAllister, his supervisor, made similar statements in her affidavit. The court found that Ammons offered no evidence rebutting the MWRD's contention that these were essential functions of the storeroom position. Thus, the court held that—as with the centrifuge position—assigning Ammons to the storeroom position would have forced the MWRD to eliminate one or more of the position's principal duties, and would have forced the MWRD to

assign an additional employee to the storeroom to compensate for Ammons's restrictions. Seventh Circuit case law suggests that such an accommodation would be unreasonable. *See Peters v. City of Muaston*, 311 F.3d 835, 845 (7th Cir. 2002) (finding plaintiff's accommodation request "unreasonable because it requires another person to perform an essential function of [plaintiff's] job").

Ammons first argues that the court overlooked the deposition testimonies of Patricia McAllister and William Jones concerning the storeroom position, as well as Ammons's motion to strike McAllister's and Jones's affidavits as inconsistent with their deposition testimony. Ammons points out that McAllister stated in her deposition that the only power tools Jones operated consisted of a forklift truck, overhead crane, and motorized pallet stacker. McAllister also stated that she did not keep records as to what each maintenance laborer did on a daily basis, that not all duties were performed every day, and that she did not personally know whether Ammons could do the storeroom job duties. Meanwhile, Jones stated in his deposition testimony that he did not use a forklift truck every day and that his use of the overhead crane varied, and that he used a stepladder or stepstool to reach the storeroom shelves. The court does not see how this testimony is inconsistent with McAllister's and Jones's affidavits stating that Jones operated various power tools and climbed ladders, or the court's conclusion that these functions were essential to the storeroom position. Whether McAllister knew anything about Ammons's limitations is irrelevant.

Ammons also points to an affidavit of her psychiatrist, Dr. Herman, dated August 26, 2010. In the affidavit, Dr. Herman states that Ammons could climb regular stairs and stationary portable stairs and could operate a forklift, overhead crane, and motorized

9

pallet stacker. The court, however, previously found that "Dr. Herman's letters of February 2, 2007 and February 13, 2007 indicated the restrictions that were in effect at the time the MWRD filled both the centrifuge vacancy and the storeroom vacancy. Dr. Herman's subsequent letters seeking to clarify Ammons's restrictions were all written when the centrifuge and storeroom positions were no longer vacant." (Mem. Op. & Order Mar. 1, 2012, at 13 n.3.) Ammons identifies no evidence that the opinions stated in Dr. Herman's August 26, 2010, letter were available to the MWRD at the time the storeroom position was available. The court concludes that its grant of summary judgment to the MWRD with respect to the storeroom position involved no manifest error.

## C. Additional Vacant Positions

In additional to the centrifuge and storeroom positions, Ammons argues that forty-seven other MWRD positions became vacant and could have been reasonable accommodations for her. In its March 1, 2012, opinion, the court found that Ammons admitted in her responses to interrogatories that the only positions to which she sought to be reassigned were the centrifuge and storeroom positions. (*Id.* at 3-4.) It further found that Ammons produced no evidence that she was qualified to perform the essential functions of any other vacant positions and therefore had not met her burden to survive summary judgment as to those positions. (*Id.* at 19.)

Ammons now argues that the MWRD should have offered her the additional vacant positions before promoting other employees to fill them. But although Ammons argues that, by not offering the positions to her, the MWRD failed to engage in an accommodation process, nothing in her motion for reconsideration suggests that she was

a "qualified individual with a disability" with respect to any of the positions. Ammons has the burden at summary judgment to show that she could perform the essential functions of the positions to which she argues she should have been reassigned. *Kotwica*, 637 F.3d at 748. The court previously concluded that Ammons failed to meet that burden. The court still has no evidence based on which it could determine whether Ammons was qualified for the additional positions. Ammons has therefore failed to show that the court's previous decision involved a manifest error.

## IV. Conclusion

Because Ammons has failed to present evidence creating a disputed question of fact as to whether she is a qualified individual with a disability, the court denies Ammons's motion for reconsideration.

ENTER:

/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: October 26, 2012